**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON  DIVISION**

| | | |
|---|---|---|
| **RUSSELL E. ADKINS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | **5:04-CV-80 (CAR)** |
| | : | |
| **THE HOSPITAL AUTHORITY OF** | : | |
| **HOUSTON COUNTY, GEORGIA, d/b/a** | : | |
| **HOUSTON MEDICAL CENTER, et al.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**ORDER ON MOTION TO DISQUALIFY COUNSEL**

Currently before the Court is Defendant's Objection to the Entry of Appearance and Motion to Disqualify Plaintiff's Counsel, George W. McGriff (herein "Counsel") and Eric Emanuel Wyatt [Doc. 227].  Through the present motion, Defendant contends that Plaintiff's Counsel has breached the Georgia Rules governing the professional and ethical conduct of attorneys by entering into an attorney-client relationship with a witness in this case despite the fact that her interests were in clear conflict with those of Plaintiff.  Defendant previously sought sanctions against Counsel and now seeks to have Counsel disqualified from this case.  Both parties have briefed the issues before the Court, and a full evidentiary hearing was held on this matter.

Having now considered all evidence presented and the relevant Georgia Rules of Professional Conduct, this Court agrees that the Rules of Professional Conduct were in fact breached by Counsel and that Counsel knowingly and intentionally entered into representation of a fact witness in this case despite a clear conflict of interest, likely with the intent of furthering Plaintiff's case to the detriment of any claim that the witness may have against him.  The Court also finds that

Counsel would further violate the duty of loyalty owed to his former client if he were permitted to continue in his representation of Plaintiff in the present case and that the degree and effect of this violation warrants Counsel's disqualification. This disqualification imputes to all lawyers associated in a firm with Mr. McGriff, including Eric Emanuel Wyatt. For this reason, Defendant's Motion to Disqualify is **GRANTED**.

## FINDINGS OF FACT

This action arises from the decision by agents of Defendant Houston Medical Center to revoke the medical staff privileges of Plaintiff Russell Adkins, M.D., in October of 2003. This decision was made following and allegedly based, at least in part, upon Plaintiff's treatment of a patient, Sharon Kornegay. Ms. Kornegay initially sought treatment from Plaintiff, a urologist, for a urinary incontinence problem. On the advice of Plaintiff, Ms. Kornegay underwent a surgical bladder repair procedure in June of 2003. During the procedure, Ms. Kornegay suffered blood loss and was given a transfusion. While still in recovery and prior to being discharged from the hospital, Ms. Kornegay fell in the bathroom and suffered injury. Ms. Kornegay later went home to recover.

A week after the surgery, Ms. Kornegay continued to bleed and suffered from a fever and cough. She contacted Plaintiff, and he, without seeing Ms. Kornegay, determined that she should be placed on an antibiotic. Two weeks later, Ms. Kornegay began suffering from pain and observed something white protruding from her vaginal area. On July 15, 2003, she was seen by Plaintiff in his office, and he determined that she required another surgery to repair the wound. Plaintiff advised Ms. Kornegay that he was soon leaving for Detroit but would perform the needed outpatient surgery for her that day. The surgery was performed on July 15, 2003, and Ms. Kornegay left the hospital believing everything had gone smoothly and that she would be able to attend a family reunion the following day. The next morning, however, Ms. Kornegay awoke to find a pool of blood in her bed.

She was bleeding profusely and went to the emergency room.

When Ms. Kornegay arrived at the Houston Medical Center Emergency Room, she was seen by the attending physician. Plaintiff was contacted by telephone, and staff requested that Ms. Kornegay come to the telephone at the nurse's station to speak with him. Ms. Kornegay, still in great pain, was wrapped in a sheet and escorted to the nurse's station. Plaintiff asked her what was going on and suggested that the bleeding was just part of her menstrual cycle. Ms. Kornegay informed Plaintiff that she had undergone a hysterectomy and that this was not possible. Plaintiff apologized and advised Ms. Kornegay that he was out of town but would have someone there treat her wound. He then asked to speak with the nurse.

Ms. Kornegay ultimately lay in the hospital bed enduring pain and continued bleeding for nearly eleven hours. During this time, nurses advised Ms. Kornegay that Plaintiff was not responding to their pages and that Plaintiff did not believe them when they described the extent of her condition. Ms. Kornegay was also told that another physician could not be called to see her because Plaintiff had failed to place another physician in charge of his patients before he left town. That evening, another urologist, Dr. Deighton, was finally contacted. He determined that she required yet another surgery. Dr. Deighton told Ms. Kornegay that he normally saw Plaintiff's patients when Plaintiff was unavailable, but he had not been notified that Plaintiff was out of town. The surgery was performed that evening, and when Ms. Kornegay awoke in recovery, she was stunned to find Plaintiff there. Plaintiff had in fact arrived during Ms. Kornegay's surgery. He was very upset and openly discussed Ms. Kornegay's medical condition in a public area.

Approximately two months later, Ms. Kornegay filed a formal complaint with Defendant Houston Medical Center regarding her care there. In her seven page complaint, Ms. Kornegay raised issues regarding the care she received following her initial surgery on June 23, 2003, and during her emergency room visit on July 16, 2003. Ms. Kornegay also specifically questioned

whether there was possible malpractice by Plaintiff in his treatment of her and complained about his unavailability, unprofessional conduct, and failure to arrange for another physician to care for her in his absence.  On the last page of the letter, dated September 7, 2003, Ms. Kornegay specifically questioned (in emphasized print) whether her initial surgery was even necessary, whether it was performed correctly by Plaintiff, whether Plaintiff was qualified to have performed the surgery, and whether it was proper for Plaintiff to try to diagnose the cause of her blood loss over the telephone.  Ms. Kornegay also filed a complaint with the Joint Commission on Accreditation of Healthcare Organizations, in which she detailed similar deficiencies in her treatment by Medical Center staff, including Plaintiff's absence and unavailability on July 16, 2003.

In early October of 2003, Plaintiff received a letter informing him that the Houston Medical Center Medical Executive Committee had summarily suspended his privileges to practice at the hospital for a period of sixty (60) days.  Grounds for this decision, as cited in the letter, included Defendant's concerns about Plaintiff's unavailability, violation of medical staff policies, discrepancy in documenting blood loss, leaving town without arranging appropriate coverage, discussion of confidential patient information in an unprofessional manner, and general lack of professional judgment.  Plaintiff thereafter applied for reappointment and was notified by letter on October 10, 2003, that his application had been denied.  The letter explained that Plaintiff's application was denied because his practice at the hospital reflected a pattern of problems regarding: availability and timely response to emergency room call and consultation in-house; completion of medical records in a timely manner; compliance with protocol for pre-admission of surgical patients; and attendance of meetings.  By way of example, the letter specifically referenced Plaintiff's treatment of Sharon Kornegay (identified as Medical Record No. 341879) noting his lack of availability, violation of medical staff policy on timely completion of medical records, discrepancy in documenting blood

loss, leaving town without arranging appropriate coverage, discussion of confidential patient information in an unprofessional manner, and general lack of professional judgment.

On October 11, 2003, Plaintiff contacted Ms. Kornegay.  He advised her that his privileges had been suspended because of the care she received on July 16, 2003, and he asked that she forward him a copy of her complaints.  During this conversation, Ms. Kornegay told Plaintiff that her complaints addressed more than just one issue and included charges against the hospital staff "and not just him."  Plaintiff told Ms. Kornegay that they were both victims of race discrimination, that he had a "big-wig" lawyer, and that she needed to talk to his attorney.  She advised Plaintiff that she would likely be consulting an attorney.

Within days, Plaintiff formally secured the legal representation of Counsel, George W. McGriff and Eric Emanuel Wyatt, and provided Counsel with a $30,000.00 retainer.  Counsel received and read a copy of the October letters, which informed Plaintiff of the suspension and denial of his application for reinstatement of privileges.  On October 15, 2009, Ms. Kornegay forwarded Plaintiff a copy of the complaints she filed with Houston Medical Center and the Joint Commission.

On October 21, 2003, less than a week after being formally retained by Plaintiff, Counsel went to see Ms. Kornegay and her husband.  Ms. Kornegay agreed to meet with Counsel after Plaintiff contacted her numerous times and implored her to do so.  At this time, Counsel knew that Plaintiff's treatment of Ms. Kornegay was one of the reasons Defendant provided for the suspension and non-renewal of Plaintiff's medical privileges and that Ms. Kornegay would likely testify that Plaintiff told her that he was indeed out of town and unavailable on July 16, 2003.

During this meeting, Ms. Kornegay informed Counsel that she had spoken with a couple of attorneys about pursuing a medical malpractice claim against Plaintiff and that she did not feel

comfortable talking to him or exposing the intimate details of what happened unless he agreed to represent her.  Counsel informed the Kornegays that Plaintiff had done nothing wrong with respect to her care and stated that this had been confirmed by both a physician in Albany, New York, and Counsel's brother who is also a physician.  He further informed the Kornegays that Plaintiff was being targeted by Defendant because of his race and that Ms. Kornegay likely also had a civil rights claim against the hospital because she was of the same race.  Counsel then suggested that he represent Ms. Kornegay.  The Kornegays specifically questioned whether or not Counsel would suffer from a conflict of interest if he attempted to represent both Ms. Kornegay and Plaintiff. Counsel stated that there would be no conflict because Plaintiff had not done anything wrong.

Ultimately, as a result of this meeting, Ms. Kornegay agreed to allow Counsel to represent her in connection with any claims she may have against Defendant, and within a couple of weeks (i.e., sometime in November of 2003), Ms. Kornegay delivered her medical records and other materials to Counsel, including copies of the complaints she made to Defendant and the Joint Commission.[1]  Ms. Kornegay also provided Counsel with a detailed journal she kept at the advice of another hospital.  Like the complaints, the journal described the various alleged deficiencies or errors in her treatment by hospital staff and Plaintiff.  Even after receiving this information, however, Counsel never informed Ms. Kornegay that she may have a potential claim against Plaintiff for either medical malpractice or abandonment, a conclusion which is clearly warranted by the factual allegations she made in those documents.

Sometime in December of 2003, the Kornegays met with Counsel at Plaintiff's office to discuss the case.  During the meeting, Mr. Kornegay stepped outside to speak with Counsel and

---

[1] Counsel claims that he did not receive or review Ms. Kornegay's complaint dated September 7, 2003, until May of 2005.  As stated in the hearing, however, the Court finds that Ms. Kornegay's testimony is much more credible on this issue and finds that Counsel was in fact aware of and in possession of the complaint in November of 2003.

again questioned whether he suffered from a conflict of interest in the case. Counsel became angry and said that there was no conflict. On other occasions, the Kornegays expressed concerns to Counsel about his insistence that Plaintiff had done nothing wrong in her case. Counsel subsequently brought in a nurse in an attempt to convince Ms. Kornegay that Plaintiff had not been repeatedly called by hospital staff on July 16th, as she believed, and that Plaintiff was guilty of no wrongdoing. Counsel repeatedly assured the Kornegays that there was no conflict of interest.

Still, Counsel never exactly acted as if he was Ms. Kornegay's attorney. He never requested a retainer from Ms. Kornegay. Counsel did not conduct any investigation into the medical merits of Ms. Kornegay's claims after she retained his services. He did not seek outside consultation from a nurse regarding the possibility of any malpractice in her treatment or otherwise attempt to get an affidavit or other evidence to support an abandonment claim. Most importantly, he did not ever advise Ms. Kornegay that she *may* have a claim against Plaintiff. Even when the present action was filed in this Court in March of 2004, Ms. Kornegay was not listed as a party despite all suggestion by Counsel (for the four previous months) that her claims against Defendant should be joined with Plaintiff's civil rights claims.

Approximately six months after Counsel filed the present suit, he suggested to Ms. Kornegay that another attorney, Dwight Johnson, be involved in her case. Counsel stated that he may file a motion for her to intervene in Plaintiff's federal civil rights case and that Mr. Johnson would represent her for the fall claim against Defendant which would be filed in state court. Ms. Kornegay agreed; the agreement was formalized in December of 2004. Ms. Kornegay was also still represented by Counsel – despite Counsel's "on the record" representation to this Court that he did *not* represent Ms. Kornegay in October of 2004. Ms. Kornegay always considered Counsel to be her attorney, and Counsel now admits that he was in fact representing her "with Mr. Johnson."

Sometime during this period, Counsel received notice that Defendant would be deposing Ms.

Kornegay, and in January of 2005 Counsel requested that Ms. Kornegay sign a waiver of conflict, citing Rule 1.7 of the Georgia Rules of Professional Conduct.  This was followed up by a letter on February 8, 2005.  The letter was drafted and signed by Counsel; Mr. Johnson was copied. Counsel's law partner, Eric Emmanuel, also attempted to contact Ms. Kornegay by telephone in an effort to convince her to sign the waiver.  Ms. Kornegay, however, refused to waive the conflict and responded to Counsel's letter on April 1, 2005, stating that it was not in her best interest to continue to communicate with his firm regarding matters related to her treatment at Houston Medical Center. Ms. Kornegay specifically informed Counsel that she and her husband would not consent to the use of any of their communications with Counsel to be used in the federal litigation involving Plaintiff.

On April 19, 2005, Counsel received a letter from attorney Melanie Webre in which they were informed that new counsel had been retained to represent Sharon Kornegay and her husband with respect to any claims they may have against Plaintiff and Houston Medical Center.  Ms. Webre stated in her letter that she was very troubled by Counsel's conduct in undertaking the representation of Ms. Kornegay in light of his clear conflict of interest.  At this time, no action had been taken by Counsel to further Ms. Kornegay's claims.  She had never been advised that she may have a possible tort claim against Plaintiff, and only two months remained before the statute of limitations for her claims would have expired.

A few weeks later, in May 2005, Counsel sought to withdraw from the present case, arguing that "newly discovered evidence" identified a conflict of interest that had been created by his joint representation of Plaintiff and Ms. Kornegay.  In his motion to withdraw, Counsel admitted that he had concerns about Georgia Bar Rules 1.7 and 1.9, regarding conflicts of interests between current and former clients, and he conceded that withdrawal "was necessary to avoid using confidential information of a former client."  The matter was heard by this Court (Owens, J.), and the motion to withdraw was granted.  The Court, however, additionally made findings that Counsel was guilty of

misconduct, referred Counsel to the Attorney Discipline Grievance Committee, and imposed sanctions in the form of attorneys fees for Counsel's bad-faith conduct in representing parties with conflicting interests.  Counsel appealed the award of sanctions, and the United States Court of Appeals for the Eleventh Circuit reversed and remanded the issue because of Due Process concerns. The Eleventh Circuit did not address the issue of whether sanctions were appropriate or whether there was any wrongdoing by Counsel.  The Circuit Court concluded only that Due Process required that Counsel be given more notice before monetary sanctions could be imposed.

In June, 2005, just days before her statute of limitations ran, Ms. Kornegay, represented by new counsel, filed suit against Plaintiff in Peach County, Georgia, based on his unavailability on July 16, 2003, failure to provide appropriate medical coverage for his patients while he was out of town, and failure to complete her medical records in a timely manner.  Her suit also alleges that Plaintiff and Counsel conspired to conceal important facts about the instant case and to convince Ms. Kornegay not to pursue any claims against Plaintiff.  This case is still pending.  Ms. Kornegay also filed a complaint with the Georgia Bar based on Counsel's representation of her.  The Bar ultimately absolved Counsel of any wrongdoing.

Following Counsel's withdrawal from this case, Plaintiff secured new representation. Unfortunately, Plaintiff's replacement counsel was unable to continue her representation due to illness and also withdrew from the case.  Counsel has now served an Entry of Appearance, nearly four years after his withdrawal based on a conflict of interest.  Defendant filed the present motion to disqualify Counsel, claiming that the conflict in fact still exists.

## DISCUSSION

A party's right to his choice of counsel is an important interest which requires that this Court approach any motion to disqualify counsel with great caution.  Herrmann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006); Ga. Rules of Prof'l Conduct, R. 1.7, cmt. 15. When such a motion is made, the Court must take care to balance competing interests.  Nuri v. PRC, Inc., 5 F. Supp.2d 1299, 1303 (M.D. Ala., 1998).  It should consider the facts of the particular case, balancing the need to maintain the integrity of the legal community and the legal process and to protect litigants from prejudice caused by violations of the Rules of Professional Conduct against a party's clear right to choose his own counsel and an attorney's right to practice his profession. See id.; see also In re Finkelstein, 901 F.2d 1560, 1565 (11th Cir.1990).

Generally, courts are "reluctant to grant motions to disqualify opposing counsel because 'disqualification has an immediate adverse effect on the client by separating him from counsel of his choice,' because parties often move for disqualification of opposing counsel for tactical reasons, and because, 'even when made in the best of faith, such motions inevitably cause delay.'" Clough v. Richelo, 274 Ga. App. 129, 132, 616 S.E.2d 888 (2005) (quoting Reese v. Ga. Power Co., 191 Ga. App. 125, 127, 381 S.E.2d 110 (1989)); see also Nuri, 5 F. Supp.2d at 1304.  In fact, a disqualification order should "be resorted to sparingly." Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n. 4 (11th Cir.1982).  A district court should not disqualify an attorney "on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct."  In re Finkelstein, 901 F.2d 1560, 1565 (11th Cir.1990). Moreover, "[i]f a district court bases its disqualification order on an allegation of an ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power. . . . The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated

that rule." Herrmann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006) (quoting Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir.1997)).

Of course, the party bringing the motion to disqualify bears the burden of proving the grounds for disqualification. Herrmann, 199 Fed. Appx. at 752. In Georgia, it is always presumed that members of the State Bar have complied with the relevant ethical directory and disciplinary rules in the absence of contrary evidence. Gene Thompson Lumber Co., Inc. v. Davis Parmer Lumber Co., Inc., 189 Ga. App. 573, 574-75, 377 S.E.2d 15 (1988). Attorneys practicing in this Court are bound by the Georgia Rules of Professional Conduct, contained in the Rules and Regulations of the State Bar of Georgia, and judicial decisions interpreting those rules and standards. M.D. Ga. R. 83.2.1. Attorneys are also bound by the federal common law and the American Bar Association Model Rules of Professional Conduct to the extent that they are not inconsistent with the Georgia Rules. Herrmann, 199 Fed. Appx. at 752; M.D. Ga. R. 83.2.1.

In the present case, Defendant alleges that, by undertaking representation of both Plaintiff and the Kornegays in October of 2003, Counsel violated Rule 1.7 of the Georgia Rules of Professional conduct, which deals with an attorney's obligation to avoid conflicts of interest. Defendant further argues that if Counsel were permitted to now reappear in this case and continue his representation of Plaintiff, he would necessarily violate both Rule 1.7 and Rule 1.9 of the Georgia Rules of Professional Conduct because Plaintiff's interests are materially adverse to those of Counsel's former client, Ms. Kornegay. The continued representation of Plaintiff also necessarily raises concerns about a violation of Rule 1.6, governing a lawyer's duty to maintain in confidence all information gained in the professional relationship with a client. Counsel, in response, asserts that he does not suffer from any conflict of interest, that his representation of Plaintiff would not be materially adverse to Ms. Kornegay's interests, and that, in any event, he no longer owes any duty of loyalty to Ms. Kornegay in this matter because he has no knowledge of any confidential

information and Ms. Kornegay has effectively waived confidentiality in this case.  As a "Hail Mary," Counsel further asserts that, even if a conflict of interest exists in this case, it is harmless, and he should thus still be permitted to continue in the case despite the conflict.  Each of these matters will be discussed in turn below.

Prior to reaching these substantive issues, however, the Court must first decide whether Defense counsel has standing to bring the present motion.  Bernocchi v. Forcucci, 279 Ga. 460, 463, 614 S.E.2d 775, 779 (2005); R. 1.7, cmt. 15.  For an attorney to have standing to raise the issue of an opposing lawyer having a conflict of interest, "there must be a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice." Id.  Defense counsel has satisfied this requirement.

Certainly, "it is not facially improper to simultaneously represent a party in a case and also to represent a non-adversarial, fact witness in that case." ChemFree Corp. v. J. Walter, Inc., 2008 WL 5234252, *2 (N.D. Ga., Jun. 11, 2008).  It is clearly improper, however, for an attorney to simultaneously represent two clients (one being an adversarial, fact witness) when he is unable to maintain loyalty to both clients and may be required to breach client confidentiality.  Such a circumstance breeds prejudice and delay and undermines the credibility of our judicial system. Defense counsel, through their allegations and the facts as proved during the hearing on this matter, have thus identified a violation of the Georgia Rules of Professional Conduct which is sufficiently severe to call into question the fair and efficient administration of justice.  There is no evidence to suggest that this motion was brought to delay the case, harass the opposing side, or for any other tactical reason.  Defense counsel's standing to bring this motion is supported by the facts and conclusions discussed herein. See id.

That issue being determined, the Court next looks to whether there has in fact been  an ethical violation which would warrant Counsel's disqualification. Georgia Rule of Professional

Conduct 1.7 sets forth the general rule when a conflict of interest exists and provides:

> A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client.

Ga. Rules of Prof'l Conduct R. 1.7(a).

The principal underlying this rule is clear. Simply put, "a lawyer should always act in a manner consistent with the best interests of his client. It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client-undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others." Paul v. Smith, Gambrell & Russell, 267 Ga. App. 107, 110, 599 S.E.2d 206 (2004). Loyalty to a client is "impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests." Ga. Rules of Prof'l Conduct R. 1.7, cmt. 4. Thus, if the interests of another client may impair the lawyer's independent professional judgment or in anyway foreclose alternatives that would otherwise be available to the client, the lawyer is prohibited from undertaking simultaneous representation. Id.

The "mere potential of inadequate representation that is caused by a split of loyalties is a harm that the conflict of interest rules were designed to protect." Summerlin v. Johnson, 176 Ga. App. 336, 339, 335 S.E.2d 879 (1985). A "possible conflict," however, does not itself preclude the representation. R. 1.7, cmt. 4. "The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved." Id.

Here, it is clear that Counsel did indeed violate Rule 1.7 when he undertook simultaneous

representation of Plaintiff and the Kornegays.  Counsel was aware or certainly should have been aware of a significant risk that his own interests or duties to Plaintiff would materially and adversely affect his representation of the Kornegays.  The conflict that existed in this case was apparent and should have been known by Counsel before he even spoke with Ms. Kornegay in October of 2003. Counsel knew that Ms. Kornegay would likely be a witness in any litigation addressing the revocation of Plaintiff's medical privileges at Houston Medical Center and that Ms. Kornegay was not going to provide testimony favorable to Plaintiff.  Counsel knew Ms. Kornegay planned to testify that Plaintiff told her that he was out of town and unavailable on July 16, 2003.  At or shortly after their first meeting, Ms. Kornegay also clearly advised Counsel that she had concerns about the quality of treatment provided by Plaintiff and alleged facts (both verbally to him and in documents given to him) that would cause other responsible attorneys to find that Ms. Kornegay may have a potential cause of action against Plaintiff, whether it be for malpractice or some other tort claim such as abandonment.  The situation was then further exacerbated when Ms. Kornegay questioned Counsel numerous times about a potential conflict of interest, reiterating that she felt that Plaintiff was in fact guilty of some wrongdoing.  Counsel refused to admit the conflict and instead attempted to convince Ms. Kornegay that Plaintiff had done nothing wrong in her case, i.e., trying to convince Ms. Kornegay to change her testimony in this case.

Based on the facts presented, it is evident to this Court that Counsel entered into this conflict intentionally and in bad faith and then acted to conceal his conduct.  As stated during the hearing on this matter, the Court finds that it is simply outrageous that Counsel did not run in the other direction when he saw the probable conflict interest, and quite frankly, Counsel's conduct looks like rank skullduggery – like a preemptive strike to nullify a potentially harmful witness.  In doing so, Counsel may have also violated Rule 3.4 of the Georgia Rules of Professional Conduct, which states that a lawyer shall not unlawfully obstruct another party's access to evidence.  Ga. Rule Prof'l

Conduct 3.4(a).  Counsel then continued "representing" Ms. Kornegay for fourteen months, despite the fact that Ms. Kornegay provided him with evidence which possibly supported a claim against Plaintiff and repeatedly questioned his impartiality.  During this time, Counsel simply dismissed her concerns and made little or no effort to further her claims.  Then comes the unusual situation with Mr. Johnson being brought into this case.  An action that this Court can only view as an attempt to camouflage the real situation.  It is evident that Counsel always served as Ms. Kornegay's primary attorney and that Counsel deliberately lied to this Court in October of 2004 when he stated that he did not represent Ms. Kornegay.  This is a fact which now leaves Counsel with very little credibility before the Court.  Finally, when Counsel saw the web of his scheme begin to unravel, he asked Ms. Kornegay to waive any conflict of interest.  To her credit, she refused, and Counsel was forced to admit that there was a conflict and that withdrawal from this case was necessary to avoid using confidential information of a former client.

This Court is, of course, well aware that not all conflicts of interest are foreclosed by the Rules of Professional Conduct.  "A conflict of interest may appear as a nebulous sort of thing without consequence or harm or it may appear so blatantly as to shock the conscience." <u>Georgia Dept. of Human Resources v. Sistrunk</u>, 249 Ga. 543, 548, 291 S.E.2d 524 (1982) (Jordan, Chief Justice, dissenting).  This, however, is not a case where the conflict was nebulous; the conflict of interest in this case is the type that is so blatant that it shocks the conscience. Without question, Counsel's conflict of interest materially interfered with his independent professional judgment in considering Ms. Kornegay's alternatives and in fact foreclosed courses of action that reasonably should have been pursued on her behalf.  Ms. Kornegay did not wish to accommodate Plaintiff's interests at the expense of her own and made that known to Counsel on many occasions.  It is of no relevance that Ms. Kornegay retained other counsel and was eventually able to file claims against Plaintiff in state court.  If Counsel had continued with his planned course of conduct, Ms.

Kornegay's statute of limitation would have run, and her claims against Plaintiff would have been foreclosed.  Counsel should not benefit from Ms. Kornegay's good sense to retain other counsel.

As this Court understands, the Georgia Bar has absolved Counsel of any wrongdoing in this instance.  The Court, however, is unclear as to exactly what proceedings were held by the Bar and what evidence was considered.  In light of the evidence presented here, the Court takes exception with the Bar's conclusion and finds that Counsel certainly did violate the Georgia Rules of Professional Conduct by entering into the simultaneous representation of Plaintiff and the Kornegays and thereafter lied to this Court when confronted with the issue.

Nonetheless, the finding that Counsel previously violated Rule 1.7 does not resolve the matter currently before the Court.  The more relevant inquiry is whether there *now* exists a conflict which would prevent Counsel from re-entering the case.  Rule 1.7 is helpful, but not determinative.

As stated above, Rule 1.7 precludes the representation of a client if there is a significant risk that the lawyer's duties to a former client will materially and adversely affect the representation of the client.  See R. 1.7(a).  Ms. Kornegay is certainly considered a former client in this respect.  As such, Counsel may not now represent Plaintiff if the duties and obligations Counsel owes to Ms. Kornegay will materially or adversely affect his representation of Plaintiff.  Obviously, the duties owed to Ms. Kornegay will complicate Counsel's representation of Plaintiff.  This issue has already severely delayed and complicated this litigation, and further issues can be foreseen in the event Ms. Kornegay is called to testify in the trial of this case.  It is unlikely, however, that this complication alone is sufficiently severe to warrant disqualification under Rule 1.7.

The Court thus turns to Georgia Rule of Professional Conduct 1.9, which deals specifically with the duties owed to former clients.  This rule provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless

the former client consents after consultation.

Ga. Rules of Prof'l Conduct R. 1.9(a).[2]  Accordingly, under the rule, an attorney owes a duty of loyalty not only to his current clients, but also to his former clients, and has an obligation to decline subsequent representations involving positions adverse to those clients if they arise in substantially related matters. R. 1.9, cmt 10.  The question of whether to disqualify an attorney for violation of this rule is answered in a relatively simple two-step inquiry: "(1) was there a previous attorney-client relationship and, if so, (2) did that relationship involve a matter substantially related to the current proceeding?"  Jones v. InfoCure Corp., 2003 WL 22149656 * 2 (N.D. Ga. May 13, 2003).

It is undisputed in this case that there was a previous attorney-client relationship between Counsel and Ms. Kornegay.  Whether Counsel's representation of Plaintiff is substantially related to Counsel's prior representation of Ms. Kornegay is also not a difficult question.  The facts of Plaintiff's current discrimination suit are founded in part on the events surrounding the medical treatment provided to Ms. Kornegay on July 16, 2003.  Ms. Kornegay disclosed confidential information to Counsel specifically on those events and sought his representation for claims that she may have arising out of those events.  The representation of Ms. Kornegay and Plaintiff is thus not only logically and materially related, but the two involved exactly the same events, and both involved the present litigation.

Counsel contends, however, that Ms. Kornegay does not necessarily have a "dog" in the present fight (i.e., she has no interest in the outcome of the instant case) and that he would thus not be taking a position "materially adverse" to her interests by representing Plaintiff.  This Court disagrees.  Counsel would be taking a position adverse to Ms. Kornegay in now representing

---

[2] This rule clearly contemplates motions brought on behalf of *parties* who were formerly represented by opposing counsel. The Court, however, cannot find (and Counsel has not cited) any law that limits application of the rule to motions based on a conflict with current party or that would otherwise foreclose application of the rule under circumstances presented in the case at bar.

Plaintiff.  Ms. Kornegay is adversely affected if information she previously disclosed to Counsel in confidence is used to impeach or undermine her testimony at trial.  Some of the key issues in Plaintiff's current discrimination case are whether Plaintiff was available to treat Ms. Kornegay on July 16, 2003, and whether Plaintiff provided sufficient coverage for his patients in his absence.  Thus, to prove his case of discrimination, Plaintiff must prove that he was available on July 16, 2003, contrary to Ms. Kornegay's position that he told her that he was out of town.

Even so, Counsel contends that this injury can be remedied by having another attorney appear and cross-examine Ms. Kornegay at trial.  The Court, however, does not find this remedy to be practical.  Counsel's use of information provided by Ms. Kornegay in confidence may not be limited to impeachment.  It may also be used in strategy and argument.  Without knowing what exactly Ms. Kornegay disclosed to Counsel, it is impossible for this Court of conclude how it may or may not be used in the present case.  Clearly, a lawyer's duty of loyalty to former clients includes the preservation attorney-client confidentiality.  See R. 1.9.  This obligation is not limited to the sole instance of using information for impeachment at trial.  Under Georgia Rule of Professional Conduct 1.6, a lawyer is required to maintain in confidence all information gained in the professional relationship with a client, unless the client consents to disclosure or use of the information after consultation.  See Ga. Rule Prof'l Conduct 1.6(a).  This duty of confidentiality continues even after the client-lawyer relationship has terminated. R. 1.6(e).  Ms. Kornegay thus has an interest in having her confidential communication protected, and Counsel's possible use of her communications in Plaintiff's representation are adverse to her interests.

This Court is also unpersuaded by Counsel's contention that he no longer knows any confidential information that can be attributed to his representation of Ms. Kornegay.  As noted above, Counsel has previously injured his credibility with this Court; it is thus entirely unclear whether he knows a little confidential information as he claims.

Moreover, under Georgia law, Counsel cannot merely claim that he has no confidential information where it is shown that he represented the former client in a case that is substantially related to the present one. See Tilley v. King, 190 Ga. 421, 9 S.E.2d 670 (1940) ("[I]f the two cases are substantially related, it is no answer for the attorney . . . to say . . . that he had no confidential information from his client."); Summerlin v. Johnson, 176 Ga. App. 336, 337-38, 335 S.E.2d 879 (1985). Under Rule 1.9, a party seeking to disqualify counsel is not required to point to specific confidences revealed to the attorney that are relevant to the pending case; instead, he need only show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney represented him. Duncan v. Merrill Lynch, 646 F.2d 1020, 1029 (5th Cir.1981), *overruled on other grounds*, Gibbs v. Paluk, 742 F.2d 181 (5th Cir.1984). In other words, "when an attorney has actually represented a party in substantially similar litigation, the attorney is charged with a virtually unrebuttable presumption that he/she has received confidential information." Shattles v. Bioprogress PLC, 2006 WL 5778889 *2 (N.D. Ga. July 14, 2006) (citing Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 728 (11th Cir.1988)). Because, here, a substantial relationship between Counsel's representation of Ms. Kornegay and Plaintiff has been shown, the Court may irrebuttably presume that during the course of the former representation confidences were disclosed to the Counsel bearing on the subject matter of the representation and that such confidences still exist. See Summerlin, 176 Ga. App. at 337.

This Court is further unconvinced that Ms. Kornegay has effectively waived her right to confidentiality with respect to the communications she had with Counsel in the prior representation. When the representation was terminated in April of 2005, Ms. Kornegay specifically informed Counsel that she and her husband would not consent to the use of any of their communications with Counsel to be used in the federal litigation involving Plaintiff. During the hearing on this matter, Ms. Kornegay was again asked by Counsel's attorney if she wanted anything about her relationship

with Counsel to be kept private and confidential in any way, and she clearly responded, "No. Other than what I told him when I wrote that letter to him explaining to him that everything I shared with him was attorney/client privilege." Thus, she again clarified that she was not going to consent to Counsel using her confidential communications in the present litigation. This Court then asked Ms. Kornegay specifically whether she would object to Counsel becoming a witness in this case to impeach her testimony at trial. Untrained in the law and without consulting her attorney, Ms. Kornegay replied off hand, "I don't care what he gets up there and says. Because he's been lying all the time, Sir. . . ." It would certainly be disingenuous for Counsel to argue that this statement was an effective waiver. If for no other reason, it is clear that Rule 1.6 contemplates waiver only "after consultation." R. 1.6(a). No such consultation occurred in this case.

Based on these findings, the Court concludes that continued representation of Plaintiff would be a violation of Georgia Rule of Professional Conduct 1.9, which protects against conflicts of interests between current and former clients. Still, the mere presence of conflict alone does not always require that the attorney be disqualified. Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp., 2006 WL 1877078 * 6 (N.D. Ga. July 5, 2006); Worldspan, L.P. v. Sabre Group Holdings, Inc., 5 F. Supp.2d 1356, 1361 (N.D. Ga.1998); Glover v. Libman, 578 F. Supp. 748 (N.D. Ga.1983)). As discussed above, the Court approaches a disqualification motion with caution. Thus, when determining whether disqualification is appropriate, the court should consider: "(1) whether the conflict might affect the pending litigation; (2) at what stage of litigation the disqualification issue was raised; (3) whether other counsel can handle the matter; (4) the appearance of impropriety; (5) and the costs of disqualification." Id.

First, in considering the factors listed above, it is evident that Counsel's conflict has and may likely continue to affect the current litigation. Counsel's conduct to date has seriously delayed and unnecessarily complicated a relatively straight-forward civil rights case. This action is well over

six years old and has been delayed largely in part to disputes over whether Counsel should be involved.  Counsel's continued representation of Plaintiff may likely cause even more delay, as it is foreseeable that future challenges may be made to Counsel's impartiality and potential use of confidential communication as the case progresses.  Counsel has admitted that hurdles will arise if Ms. Kornegay is called to testify at trial and that he may even be placed in the position of becoming a witness in this case if necessary to impeach Ms. Kornegay's testimony.  Such issues would obviously complicate this case and may ultimately derail this litigation, at an even later stage, if this Court is called to again address the issue of Counsel's ability to handle the conflict that clearly exists.

Certainly, this motion to disqualify comes late in the stages of this litigation and disqualification of Counsel would itself cause disruption.  The case, however, is far from over, and a trial date as not yet been set.  More importantly, the Court notes that this is not the first time the issue of disqualification was raised.  In fact, Defendant first raised concerns about Counsel's representation of Ms. Kornegay and the conflict of interest in October of 2004.  The present motion is thus just a continuation of that issue and a result of Counsel's intentional misrepresentations and attempts to conceal his misconduct.  The late stage at which this motion is brought thus does not necessarily weigh against disqualification.

In fact, the Court further finds that new counsel may still enter this case and provide Plaintiff with competent and effective representation without undue delay.  Counsel is certainly not the only attorney who may handle this matter. Counsel voluntarily withdrew from this case four years ago (citing the present conflict of interest), and Plaintiff was represented by another competent attorney.  Thus, Counsel was not intimately involved with the case during a large part of it and would have to come up to speed like any other attorney entering the case.

Furthermore, the appearance of impropriety in this case is clear.  As found above, it appears

that Counsel initially contacted Ms. Kornegay in an effort to neutralize an adverse witness, failed to serve her best interests, and then attempted to conceal his misconduct and made deliberate misrepresentations to this Court. This impropriety may be harm enough to warrant disqualification. Inasmuch, the Georgia Supreme Court has found that "[d]isqualification is always justified and indeed mandated, even when balanced against a client's right to an attorney of choice, [where] the appearance of impropriety [is] coupled with [an actual] conflict of interest or jeopardy to [the former] client's confidences." Blumenfeld v. Borenstein, 247 Ga. 406, 409, 276 S.E.2d 607 (1981).

Finally, the Court finds that the costs of disqualification in this case are much less than the costs which will be incurred by not disqualifying Counsel. As noted above, Counsel claims that "no harm" would be suffered if he were permitted to continue representing Plaintiff. The Court strongly disagrees. "Harm" would be suffered by Ms. Kornegay if Counsel was permitted to potentially breach the duty of confidentiality owed to her, and Defendant would be harmed if Counsel was able to use information learned from Ms. Kornegay to further Plaintiff's case and to its detriment.

Plaintiff would even be harmed if Counsel continued in this case, and he was forced to suffer even more complication, delay, and expense of the present litigation. On the other hand, Plaintiff certainly stands to lose the most if his attorney is disqualified, as he does have a right to his counsel of choice. Yet, the Court also observes that Plaintiff is likely without clean hands in this situation. It appears that he may have conspired with Counsel to influence Ms. Kornegay's testimony in this case. Plaintiff knew that Ms. Kornegay had complained about the care that she received from him but still initiated contact with Ms. Kornegay, advised her they were both victims of discrimination, and urged her many times to meet with his attorney. Plaintiff also knowingly chose to rehire Counsel even after he admitted to a conflict of interest in this case in 2005. In so doing, he placed himself in the position where he knew that his attorney previously withdrew because of a conflict, that his attorney likely owed a duty of loyalty to former client which may still conflict with his own

interest, and that his counsel may thus ultimately be disqualified or have to withdraw from the case *again*.

Most significantly, the Court finds that it and the judicial system as a whole would be harmed if Counsel was permitted to continue in the present action after having engaged in the unscrupulous conduct found herein.  Counsel's conduct has been (and will likely continue to be) disruptive to the  smooth and efficient administration of this case.  He has knowingly engaged in misconduct and has  lied to this Court.  In his supplemental brief, Counsel asserts that this Court "should be concerned with the loss of confidence in the judicial system inherent in parties before this Court not being allowed to be represented by counsel of their choice."  Ironically, the Court finds that it is conduct like that which Counsel engaged in here that undermines the public's confidence in the judicial system.  Counsel's disqualification would likely have the opposite effect of what Counsel suggests; it would demonstrate to the public that attorneys will not be permitted to engage in unethical conduct and continue in litigation unaffected.

Counsel's continued representation of Plaintiff in the present action would therefore not only be an ethical violation under the Georgia Rules of Professional Conduct, but it would also be harmful to this litigation, the parties involved, and the legal system as a whole.  For this reason, Defendant's Motion to Disqualify Attorney George W. McGriff should be **GRANTED**.

## CONCLUSION

**WHEREAS**, this Court finds that Plaintiff's Counsel, George W. McGriff, violated the Georgia Rules of Professional Conduct by knowingly and intentionally entering into representation of a fact witness in this case despite a clear conflict of interest; that Counsel would further violate the duty of loyalty owed to a former client if permitted to continue representing Plaintiff in the present case; and that the degree and effect of such violations warrant Counsel's disqualification,

Defendant's Motion to Disqualify George W. McGriff from acting as counsel in this case is **HEREBY GRANTED**.  This disqualification necessarily imputes to all lawyers associated in a firm with Mr. McGriff, including Eric Emanuel Wyatt.  <u>See</u> Ga. Rules of Prof'l Conduct, R. 1.10(a).[3] Plaintiff has forty-five (45) days from the date of this Order to secure new counsel and have his new attorneys file an entry of appearance in this case.  If Plaintiff fails to secure new counsel during this time period, he will be required to proceed *pro se* for the remainder of this litigation or until new counsel is secured.

   **SO ORDERED**, this 20th day of October, 2009.


       <u>S/ C. Ashley Royal </u>
       **C. ASHLEY ROYAL**
       **UNITED STATES DISTRICT JUDGE**

JLR/thc

---

[3] Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7 . . . [or] . . . 1.9." Ga. Rules of Prof'l Conduct, R. 1.10(a).